**SEARS, ROEBUCK & CO., Appellant,**

v.

**L–M MANUFACTURING COMPANY.**

**No. 12396.**

United States Court of Appeals
Third Circuit.

Argued March 18, 1958.

Decided June 10, 1958.

Rehearing Denied July 15, 1958.

Bernard Eskin, Philadelphia, Pa. (Allan H. Reuben, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., on the brief), for appellant.

Erwin Lodge, Philadelphia, Pa. (Leon Edelson, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

This action for injunctive relief and damages is predicated upon the charge of unfair competition. The conduct complained of is the alleged wrongful exploitation of a trade secret in the form of an extensive customer list.

Plaintiff Sears, Roebuck and Company is a New York corporation, operating a large mail order business and a chain of retail department stores. Defendant L-M Manufacturing Company is a Pennsylvania corporation engaged in the business of manufacturing chain saws and their replacement parts.

During the period from 1951 to 1955, plaintiff and defendant entered into a series of contracts by the terms of which defendant agreed to sell to plaintiff a certain number of chain saws which plaintiff intended to sell at retail. By a provision of these contracts, defendant manufacturer warranted to plaintiff that the saws would remain free from defects for a period of thirty days after the retail purchase, and plaintiff in turn warranted the saws for the same period to its customers.

When a customer purchased a chain saw from Sears, he could take advantage of the warranty if he so chose by filling out the warranty card with his name,

address, and date of purchase, and returning it to plaintiff Sears. Of the 65,000 chain saws sold by Sears, 23,000 warranty cards were returned. Sears in turn sent the warranty cards periodically to defendant. Each saw sold by Sears was packaged in a carton on which the name of defendant as manufacturer was stenciled. In addition, there was included in each carton another warranty card addressed to the Oregon Saw Chain Corporation, the manufacturer of the saw chain. On these cards also, defendant's trade name was clearly stamped. Purchasers knew that defendant, and not Sears, manufactured the saws.

In 1956 plaintiff Sears began manufacturing and selling its own chain saw substantially different from the one defendant manufactured. At that time defendant still had in its possession 23,000 warranty cards, Sears having failed to ask for their return. Defendant began circularizing the customers listed on the cards and offered for sale replacement parts of the saws it had manufactured and which plaintiff Sears no longer sold. The district court found that the circulars of defendant were not deceptive and did not confuse prospective purchasers as to the source of the parts.[1]

The district court decided that plaintiff Sears was not entitled to injunctive relief restraining defendant from using the customer list. The decision was based primarily upon findings of fact that the relationship between plaintiff and defendant was one of seller and buyer, defendant being an independent contractor, that the warranty cards were given over to defendant without instructions or restrictions as to use, and that the circumstances did not give rise to any implied fiduciary relationship requiring defendant to assume that it received the information from plaintiff in confidence. Sears argues that these findings are not findings of fact at all, but rather inferences drawn from basic facts, and that the review by this court is therefore not trammelled by the "clearly er-

roneous" provision of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C. Even if we are free to draw our own inferences, the circumstances here are such that our conclusions would be the same as those of the district court, for it is clear to us that it was never intended that the list of customers be secret.

Both sides are in agreement that the law of Pennsylvania applies, and in Pennsylvania a customer list procured under circumstances giving rise to a relationship of trust can be considered a trade secret. Chas. H. Elliott Co. v. Skillkrafters, Inc., 1921, 271 Pa. 185, 114 A. 488. However, plaintiff must take certain measures to guard the secrecy of the information, and conduct on its part inconsistent with that secrecy will estop plaintiff from seeking equitable relief. Restatement, Torts § 757, comments b and d (1939).

If there had been an express agreement between the parties as to the secrecy of the list and its restrictive use, Sears would of course be entitled to the relief it seeks. There was no such express agreement here. The law may, however, imply an agreement to keep information secret where there is a confidential relationship and the facts evidence the intention that the information be kept secret.

The heart of appellant's contention that the list was to be considered secret lies in its allegation that the warranty cards were turned over to defendant for the limited purpose of allowing defendant to determine the duration of the warranty period. This contention was presented to the district court as a proposed finding of fact. It was rejected. Instead, the court found that plaintiff and defendant mutually agreed to issue the cards to the purchasers of the saws which were manufactured and sold under eight consecutive contracts between the parties from 1951 to 1955, and that there were no provisions in any of the contracts, either express or implied, re-

---

1. This finding is not challenged on this appeal.

lating to the warranty cards or the use of the customer list. The district court made this further finding:

"12. The warranty cards returned to plaintiff by customers were delivered to defendant voluntarily by plaintiff and without any restrictions, instructions or conditions, written or implied, relative to their use by defendant for any purpose."

If appellant's only purpose in giving the cards to defendant was to enable defendant to determine the duration of the warranty, why did not Sears demand the return of the cards after the warranty period expired? This becomes of special importance because Sears should have known that defendant had other legitimate business interests in the list besides the calculation of the warranty period.[2] Instead, appellant made no demand for the return of the cards until eleven months from the termination of the last contract between plaintiff and defendant, nearly five years after the warranty period had expired on many of the cards initially sent to defendant.

A further circumstance militates against an implied agreement that the names on the warranty cards were to be kept secret. Oregon Saw Chain Corporation manufactured saw chains for defendant's product. With Sears' knowledge, a warranty card for the saw chains addressed to Oregon was placed in the carton with every saw sold by plaintiff at retail. Presumably those who filled out the warranty card sent to Sears also filled out the saw chain warranty for Oregon, so that a similar list of 23,000 customers was divulged to Oregon, a total stranger to the transaction between plaintiff and defendant. Since Sears acquiesced in the knowledge that Oregon had the same list defendant had, it cannot now be permitted in good conscience

to claim the list constituted a trade secret.

Under these facts the district court's conclusions were amply justified, and its judgment will be affirmed.

## PER CURIAM.

A petition for rehearing has been filed by Sears, Roebuck and Company. Its principal argument is that our opinion is in conflict with the decision of the Supreme Court of Pennsylvania in Pressed Steel Car Co. v. Standard Steel Car Co., 1904, 210 Pa. 464, 60 A. 4. The petitioner makes the unwarranted assumption that this court has not considered that decision. To the contrary, the case was given full consideration by the court and was found to be completely inapposite to the present appeal. The defendant in the Pressed Steel case was enjoined from using plaintiff's blueprints because the prints were delivered for the limited purpose of assisting customers to order certain goods from the plaintiff, and for no other purpose. Furthermore, the plaintiff required the customers to sign receipts for the blueprints, indicating, as both the lower court and Supreme Court found, that they were delivered for a restricted purpose, and thus were trade secrets. The facts there were sufficient to imply an agreement on the part of defendants to keep the information secret.

In the case before us, however, the district court found that the warranty cards were delivered by plaintiff without any restrictions as to their use. Plaintiff knew that defendant had a legitimate business interest in the information on the warranty cards. Quite plainly here there was no implied agreement to keep the information secret.

The petition for rehearing will be denied.

---

**2.** Defendant's good will was at stake. It used the list to send revised manuals to the customers, inform them of better component parts discovered after the saw was sold, and to keep a record of serial numbers in the event that a saw was stolen.